Okay, one more matter this morning, right? Yeah. Ben Ray, Lokan, Stephen A. Rahr, Counsel for the Appellant Vanessa Pancake, Chapter 7 Trustee, Brian Turner, Counsel for the Appellees, Stephen Scott Lokan, Brenda Lee Lokan. Okay, Mr. Rahr, do you want to reserve a little time? Yes, Judge Lafferty, I'd like to reserve five minutes, please. Okay, five minutes it is. Okay, do you want to make your appearance? Good morning, Your Honors. May it please the Court, Stephen Rahr, appearing for Chapter 7 Trustee Vanessa Pancake. There are several issues presented in this appeal, but they all stem from one central question, and that is, did the debtors convert from Chapter 13 to Chapter 7 in bad faith? Can I interrupt you for a second? You're a little bit faint. I can hear you, but it's a bit of a strain, and I don't know if my colleagues are having the same issue. We want to get every word, okay? I will move closer to the mic and speak louder. That's a little better. Thank you. I would like to use my time today to distill the trustee's argument to two central points, one point of law and one point of fact, that I believe together resolve this case in the trustee's favor. Starting with the law, the debtors' bad faith argument, or I suppose their argument that they acted in good faith, focuses, laser focuses on the four non-exclusive factors from In Re Levitt. And the trustee agrees that Levitt provides the rule of decision here, but the debtors' focus on these four factors overlooks the single most important part of the Levitt holding, and this is something the trustee cited in both of her opening and reply briefs. And that is that neither malice, fraud, ill will, nor malfeasance is required to find bad faith under Levitt, and those are words all used by the Ninth Circuit in the Levitt opinion. So this rejection of a substantive, sorry, this rejection of a subjective intent requirement is critical to understanding the first and fourth factors of Levitt, which are the ones that are primarily at issue here. I think this matter is complicated a little bit because there are a lot of cases that both sides have cited where other debtors have been found to act in bad faith based on absolutely atrocious things they did. Here, the bankruptcy court found the debtors didn't act in bad faith, but it also noted that the debtors didn't conduct themselves perfectly. And the trustee mentions some of these missteps in the briefing because they provide important context. But at the end of the day, right here today in front of this court, I'll admit the Locans didn't take their inheritance and squander it in Vegas. They didn't invest it in uranium stocks. There are a lot of worse things they could have done, but that doesn't really matter because… Mr. Ray, let me ask you. I'm trying to figure out what the bad faith here is. Let me just ask you this question. What difference would it have made to the trustee's ability to file a motion if the debtors had disclosed the inheritance in November of 2021, the month Stephen Locan's brother died, rather than disclosing it in their conversion schedules filed on April 1st, 2022? What difference would it make? Why is that bad faith? It seems like the trustee did learn about it from the debtors' voluntary disclosure, and the trustee learned enough about it to be able to file their motion. And I don't see anybody arguing that her motion was filed tardily. Right. I think the delay… I think it's relevant because the plan required immediate disclosure. I think Your Honor raises a valid point that maybe, at the end of the day, the delay isn't the most prejudicial thing here. And that's why I apologize if our briefing focused too much on the delay, because I think the central thing here, in terms of bad faith, is the size of the inheritance. Because it could have paid creditors in full, either under Chapter 13 or post-conversion, under Chapter 7 with the finding of bad faith. So your argument is that it would make a difference if Stephen Locan inherited $2,000 versus what appears to be maybe $350,000 when you take in the real estate and the cash. I do think that matters, Your Honor. The hypothetical that I did the rough math on was maybe a $10,000 inheritance. My quick back-of-the-envelope math there, we could assume all the same facts as this case, but a $10,000 inheritance. And I think their general and secured creditors, after cost of administration, would have gotten about $0.10 on the dollar compared to the current plan, which anticipated $0.02 on the dollar. So maybe not hugely prejudicial there, but here… The bad faith has got to be focused on the Locans, that the Locans did something bad. And what did Stephen Locan do bad by inheriting a lot of money from his brother as opposed to a little bit of money from his brother? What was bad on behalf of Mr. Locan to do that? So receiving the inheritance wasn't bad faith, but converting to Chapter 7 for, I think, the express purpose of using that inheritance to fund the debtor's retirement is bad faith. That is not subjective bad faith. It is reasonable to want to retire. But to do so just to keep those funds out of the hands of unsecured creditors, I believe, is prejudicial, and I'm not sure. I mean I think this could qualify as inequitable treatment of creditors under the first factor. It could be an unenumerated factor. What about when you couple that with the debtor's automatic right to do things in the 13? Congress created 13 in a way – they didn't want to discourage people from going to a 13, and Congress could have passed a law that says, well, you can convert only if you didn't inherit a lot of money. It's just not in the code. Well, absolutely. I think that is a major issue in this case, and I read the bankruptcy court's ruling to say it is not bad faith to take advantage of one's statutory rights. And I think that reading is, with all respect to the bankruptcy court, I think that is circular logic, and it reads 348F2 completely out of the code. Debtors have a right to convert or dismiss, but they don't have a right to convert without being subject to 348F2. And so the judge has to look at it, and looking at the standard here, Judge Wren here was making a factual determination that it was in good faith versus bad faith. Right, and the standard of review – excuse me. I silenced my cell phone, but not the landline. We've all been there, sir, so it's fine. We've all been there. The – I think what's relevant here is that the trustee's argument relies almost exclusively on the stipulated facts, and to the extent that the bankruptcy court made any factual findings not based on the stipulated facts, I don't think they're relevant to the appeal. So we have a situation here where the facts are agreed on, the legal framework is agreed on, and the question is whether the bankruptcy court correctly applied that framework to the facts. And I think the Searles case cited in our brief is controlling, and with apologies if this is bad form, I just last night in preparing – I really think in reading Searles that that's a BAP opinion. It very heavily cites the case Enright-Bammer, Ninth Circuit on Bank Opinion, 131 F. 3rd, 788. And I think that is on all fours with these facts, addressing the standard of review on a mixed question of law and fact. So I apologize for bringing that up at the last minute, but I encourage the court to consult that. Very quickly, to get to the second point, I want to make the point of fact. I think this is all on page 69 of the excerpt of record. This is the stipulated facts that the parties agreed to before the evidentiary hearing. And on page 69, there are – the debtors have advanced four reasons for converting their case in paragraphs labeled A through D. And I think you can take – set aside paragraph B. The rest of them all essentially say the same thing. The debtors didn't want to run their business, and they wanted to retire. And I think this goes back to the point of law. Say it again. There's nothing malicious about wanting to retire. But Levitt requires more than that. It asks what's the impact on creditors. And I think the debtors are very forthright that they wanted to fund their retirement with money, some of which would have gone to creditors if they had remained in Chapter 13 or if they had dismissed. And that might not be subjective bad faith, but it is objectively prejudicial to creditors and qualifies for bad faith under Levitt. And that's why we ask for reversal. And I can take another question. I think I'm at my time. I will let Mr. Turner speak. Okay. Any questions from the panel? Okay. Then you're reserving. You're right at five. Good job. Okay. I'm Brian Turner. I'm the attorney for the appellees Stephen and Brenda Locan. Can everybody hear me okay? Yes. Okay. So, in 1994, Congress set out to resolve a circuit split involving the inconsistent application of bankruptcy code statutes defining property of the estate in cases converted to Chapter 7. In one case, in the Seventh Circuit, the court held that Chapter 13 debtors' inheritance became property of the estate or remained property of the estate in the converted case. In the Third Circuit, the court held that post-petition cause of action in Chapter 13 was not property of the estate on the conversion. So, in drafting Section 348F1, Congress specifically rejected the Seventh Circuit's approach. It drafted Section 348F1 to limit property that's acquired post-petition during the Chapter 13, such as post-petition inheritances, that were the subject of the Inlay-Lybrook case in the Seventh Circuit to the code's definition of that property found at Section 541A. So, that means property that the debtor had as of the date of the petition or, in the case of inheritances, property that they received within 180 days after. So, both the parties here agree that the debtors filed their Chapter 13 and almost a year passed before the debtor's brother died and he became entitled to the inheritance. So, under Section 541A.5, had the debtors originally filed this case as a Chapter 7, that property would not have been included in property of the estate, and there wouldn't be any controversy to that. We wouldn't be sitting here arguing today if this case had originally been filed as a Chapter 7. So, the specific purpose of Congress in drafting this statute was to allow the debtors some form of protection and to encourage them to file Chapter 13s rather than a Chapter 7 at the outset because it allows them to later protect property if they were to acquire it post-petition upon the conversion. In other words, it's treating the debtor as if the debtor had filed the Chapter 7 from the outset with the reservation that if the debtors are in the conversion or perceived to have been done in bad faith, there's an escape patch that allows courts to include property acquired by debtors if they were acting in bad faith. So, the trustee has three main arguments. The first one is simply, as Mr. Rare stated, that the debtors' argument that it's not bad faith to do what the Code allows is somehow circular logic. So, in other words, the Bankruptcy Code has drafted these specific protections. It would seem rather absurd if they were to draft these protections and not allow the debtors to avail them. The Ninth Circuit actually agrees with this concept. And for R.V. Sandoval, the Ninth Circuit BAP looked at this very issue in the context of a conversion from Chapter 13 to Chapter 7 where I believe in that case the post-petition asset was appreciation of value in their home. The Ninth Circuit also looked at this issue in a completely different context in Chapter 13's revolt involving disposable income. So, in Welsh v. Drummond, this court or the Ninth Circuit excluded or allowed the debtors to exclude counting their Social Security income as disposable income because the Code specifically allowed it. And the Chapter 13 trustee challenged that exclusion under the good faith provision of Section 1325A. So, the court ruled that because the court explicitly granted the debtors this protection insofar as excluding their Social Security income, that it could not be considered bad faith or a lack of good faith for the debtor to avail themselves of that specific protection. So, to argue that Congress would create a protection but then make it bad faith to avail oneself of that protection just doesn't seem consistent with the meaning of the statute or how it should be interpreted. And we can see this, I think the trustee has argued that it could be considered egregious for the debtors to convert after having received a larger amount than, say, I think the amount that was mentioned was $2,000 instead of the larger amount the debtors received. Well, elsewhere in the Bankruptcy Code, it's not unusual to find protections that far exceed the protection that the debtor is seeking in this case. So, for example, the State of California allows a Homestead Exemption of $678,000. Washington State, just north of us in Clark County, where Washington allows debtors to claim a Homestead Exemption in the amount of the average sales price of their home. So, in Clark County, just north of me across the river, a debtor can exempt $543,000 of equity in their home. And if they happen to live in King County, that's over $900,000. And we all know that there are states like Texas and Florida that allow unlimited Homestead Exemptions. So, the notion that allowing a debtor to seek a protection that the Bankruptcy Code explicitly provides is somehow egregious because the amount of that protection flies in the face of these statutes that say that debtors could perhaps keep a million dollars if that was filed into their homestead if they filed in a case or in a state like Texas or Florida. Yet, there is no legal controversy over these exemption statutes, nor should there be in a case where a debtor has received an inheritance that admittedly is rather large to convert under a specific statute that's allowed under the Bankruptcy Code. The trustee or the appellant also argues that this court should review the case under the de novo standard. Well, the Ninth Circuit's already ruled that the trial court's factual determinations are subject to the clearly erroneous standard, and the Ninth Circuit's also ruled that bad faith determinations are considered factual determinations, and as such, they're reviewed as well under the clearly erroneous standard. And both the appellant and appellee agree in this case that the aforementioned Levitt factors apply, and that's what this trial court applied in this case. So back to whether or not a factual review is even possible in this case, I'd note that the BAPS Rule 8009-1 requires the appellants to include transcripts of the record necessary for, quote, adequate review in light of the standard of review. On March 27th, this court notified the appellants of a deficient filing as to this very regard, namely that they failed to include the transcript from the December 8th trial, the main event, so to say, in this case, that that hadn't been filed. The appellants responded that they excluded this information from Your Honor in order to avoid incurring the additional monetary cost of producing that transcript. So that means that an entire transcript of the proceedings is not available to this court, therefore the appellants unable to meet its burden to convince this court that the trial judge erred in weighing the testimony of the debtors at that full day trial and all the evidence that was presented to the court on that day. The appellant also argues in his brief that specific acts of the debtor can be considered or construed as bad faith. Here again, the trial court was tasked with determining whether these specific actions as presented through extensive testimony at trial constituted bad faith within the meaning of Section 348F2. And after hearing all that testimony, the trial court got the law right and they concluded that the acts of the appellees during their case were not in bad faith. So for example, the trustee brings up the reporting to the Chapter 13 trustee and I know that Judge Corbett asked some questions about this. I'm not arguing that debtors should not notify a Chapter 13 trustee, but the fact that the debtors have the absolute right to convert from Chapter 13 to Chapter 7 means that had they notified the trustee that they'd received the inheritance but were converting, which they had decided to do, neither the trustee nor any party in interest would have had any legal means to prevent the debtors from actually effectuating that choice by filing the conversion and in fact converting the case over to Chapter 7. And then the trust or the appellant makes light of the fact that there were there was not a lot of detail in the schedules that the debtors or the appellees filed in their conversion documents and that this constitutes somehow an attempt to conceal the existence or fact that they'd received an inheritance. But that flies in the face of the fact that they actually made that they made that disclosure. The only reason the Chapter 7 trustee knew to ask the appellants or the appellees about the inheritance was because it was included in the schedules and arguably the Federal Rules of Bankruptcy Procedure Rule 1007. Yes, sir. I see the record. I see when Stephen's brother died. I see when they went to their lawyer and said, oh, none of that's contested. And at the end of this, I see that the trustee, she had sufficient information to bring her motion. But was there any allegation that Mr. and Mrs. Loken failed to answer questions at the 341 meeting? Not to my knowledge, Your Honor. I didn't see it in the record. I assume that the trustee got her questions answered because she was able to file her motion. That is correct. And also because the debtors were truthful and accurately described the nature of the inheritance and provided all documentation that was requested by the trustee. And while this was all happening, we were still fall of 21 and spring of 2022. We're still somewhat affected by the pandemic and the ability to meet in person, trade documents. It can be difficult for some debtors who are not so tech savvy that live far from our office to be able to get accurate information over to us. But that's absolutely true that the trustee appellant here was able to ask her questions at the meeting of creditors because the appellees had specifically scheduled that property. And then back to the trial court's findings. It can be inferred due to the lack of the record, the full record, that the trial court found the appellee's testimony credible because there can only really be two outcomes of a debtor's testimony. Either it's credible or it's not. And this court can easily infer from the trial court's or the trial judge's finding of no bad faith that after a full day trial featuring the debtors as the sole witnesses, that the judge found the debtors to be credible. It's hard to believe the trial court would have rolled in their favor if the opposite had been true. And then finally, it should be noted that one of the arguments was that the debtor's attorney was inadequate in providing information in the schedules for the property. The bad faith in section 3F relates to the conduct of the debtor. Mr. Turner, I'm not sure what's up with your connection, but you're breaking up just a bit and the picture seems to be frozen. Okay, am I now? The picture's still frozen. Okay. Maybe I'll stop my video and restart it. Well, we're just about... Mr. Turner, we can hear you just fine, and we know what you look like now. I'm not sure I can hear him just fine, but I hope he goes quiet. No, we can hear better if he just takes off the video. It gives broader bandwidth and we can hear it. Judges, Mr. Turner's connection is very poor and he just actually disappeared off the participants list. He's back on screen now. Okay. Can you hear me now? Yeah, why don't we let you go another minute, okay? Okay. Yeah, I guess the last point I want to make is that circling back to the appellant's argument that there's per se bad faith here. I'd like to point out that there is no such thing as per se bad faith in the Ninth Circuit because the standard is to review the debtor's acts or omissions on a case-by-case basis under the totality of the circumstances. And that's, in fact, what happened here. Again, there was a full-day trial where the debtors testified and the appellant had every opportunity to cross-examine the debtor. And in reviewing the totality of the circumstances and in applying the four factors of the Levitt test, the trial judge reached the conclusion that these acts did not constitute bad faith within the meaning of Section 348.2. And, therefore, the conversion was not in bad faith and the inheritance is not property of the estate in Chapter 7. I think that's my answer. Okay, thank you very much. Okay, Mr. Rory, you've got five minutes. Thank you, Your Honors. I guess to come back to the argument that the debtors did what the Code allows, I'm very glad Mr. Turner brought up the Drummond's case. I was thinking about that case as well yesterday. And I think it illustrates the difference here. In Drummond's, if I remember it correctly, this was about debtors who had a lot of toys, a lot of vehicles, recreational equipment that were subject to secured debt. And that secured debt reduced the amount that they paid into the Chapter 13 plan. And I think the difference there is the Code is very explicit that Chapter 13 debtors can count secured debt against income paid into a plan. And the debtors were doing that. Contrast that to this situation where the Code says Chapter 13 debtors have an absolute right to convert or dismiss. It does not say they can convert without consequences. The Code very explicitly says there are consequences if you convert in bad faith. So that's where the circularity comes in. I realize whether it was bad faith is hotly contested. But you can't bypass the bad faith requirement or consequence just by saying there's an absolute right to convert. And I think this ties into another issue that Mr. Turner was just talking about, which is the factual issues, the finding facts, the lack of the transcript. Again, I think the Bankruptcy Court in its ruling was fairly explicit that it was relying mostly on the stipulated facts. I think the one thing, the factual finding that the Bankruptcy Court might have made that went beyond the stipulated facts was the Court did say the debtors have provided an adequate explanation. And I think this goes back to the Searles and the Bammer case I was just talking about. Sure, if the Bankruptcy Court said their explanation was adequate, that is a factual finding subject to clear error review. But the issue here is whether an explanation by the debtors can overcome the objective harm to creditors caused by keeping the inheritance out of the bankruptcy estate. That's always the case, whether they're in good faith or not. Creditors are always harmed if they don't get the extra money, whether or not it's good faith. So I'm not really understanding that distinction. Well, I think that in this case boils down to the fact that this was, as I believe the parties stipulated, this was an unexpected windfall. This wasn't money that the debtors created or value that they created through their own work. It was... So inheritances are always just going to be scooped into the Chapter 7 estate because nobody knew that Aunt Bessie was going to die and leave them $500,000. Is that right? I think, yes, if the inheritance is enough to pay creditors in full, I think our first issue presented, that's the per se issue, is aside from the debtors subjective what was going through their mind, is it bad faith to exclude a windfall from creditors by converting to Chapter 7? And the trustee would say yes. Didn't Congress sort of answer that question and said, yes, you inherit money that's going to be able to make a distribution to creditors. We're going to include that if it's within 180 days of the windfall. This one just happened to be outside the 180 days. And I have a second question because it's getting to the end here. But looking at whether the judge properly decided that under the circumstances that the debtors told him, told Judge Wren, that he believed him and thought their explanation was good enough, how can we examine whether or not Judge Wren's conclusion that that explanation was good enough without the trial transcript? I guess my response to that question would be the explanation is not terribly relevant to an objective test. And we are willing, we go back to the stipulated reasons given on, the debtors reasons given on page 69 of the excerpt of record. They wanted to use that money to retire. And that's what we're relying on. That is not subjective bad faith, but it is objectively prejudicial. Okay, we're at your time. Anybody have any additional questions? Okay, thank you very much. Interesting issue, the matter is submitted. Thank you. Okay, we are going to be in recess for a little while.
judges: Lafferty, Brand, and Corbit